IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CARNELL CORNELIUS ROLLINS § | |
| § | |
| Petitioner, § | |
| § | |
| VS. § | |
| § | NO. 3-06-CV-1055-K |
| NATHANIEL QUARTERMAN, Director § | |
| Texas Department of Criminal Justice § | |
| Correctional Institutions Division § | |
| § | |
| Respondent. § | |

**FINDINGS AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Petitioner Carnell Cornelius Rollins, appearing *pro se*, has filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated herein, the application should be denied.

I.

On July 6, 2005, petitioner was released to mandatory supervision after serving part of an 18-year sentence for attempted murder.[1] As a condition of his release, petitioner has been ordered to participate in a Super-Intensive Supervision Program ("SISP"), which includes home confinement and electronic monitoring. Petitioner challenged these SISP conditions in an application for state post-conviction relief. *Ex parte Rollins,* No. 5,013-18 (Tex. Crim. App. May 24, 2006). The application was denied without written order. Petitioner then filed this action in federal district court.

---

[1] Petitioner was released to mandatory supervision at least four times prior to 2005. Each time, his supervision was revoked and petitioner was returned to custody. (*See* Hab. Pet. at 7).

II.

In two grounds for relief, petitioner contends that: (1) the imposition of SISP conditions on his mandatory supervised release violates the *ex post facto* clause of the United States Constitution; and (2) the forfeiture of previously earned good time credits has impermissibly extended his release date in violation of the double jeopardy clause of the Fifth Amendment.

A.

The standard of review in federal habeas cases is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* Pub.L. 104-132, 110 Stat. 1214 (1996). Where, as here, a state court has already rejected the claims raised by petitioner, a federal court may grant habeas relief only if the state court adjudication:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). An unreasonable application of clearly established federal law is one in which "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*, 120 S.Ct. at 1523; *see also Pondexter v. Dretke*, 346 F.3d 142, 145-46 (5th Cir. 2003), *cert. denied*, 124 S.Ct. 2160 (2004). Stated differently, "a federal court may grant relief when a state court has misapplied a 'governing legal

principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003), *quoting Lockyer v. Andrade*, 538 U.S. 63, 76, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003).

With respect to mixed questions of fact and law, a federal habeas court must give deference to state court findings unless they are "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir.), *cert. denied*, 121 S.Ct. 508 (2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

B.

Petitioner first challenges his SISP conditions, including home confinement and electronic monitoring, on *ex post facto* grounds. A state prisoner may seek federal habeas relief to remedy the retroactive application of a law that poses a significant risk of increased punishment. *See Johnson v. United States,* 529 U.S. 694, 699, 120 S.Ct. 1795, 1800, 146 L.Ed.2d 727 (2000); *Garner v. Jones*, 529 U.S. 244, 250, 120 S.Ct. 1362, 1367, 146 L.Ed.2d 236 (2000). The Fifth Circuit applies the "intent-effects" test to determine whether a law imposes "punishment" in violation of the *ex post facto* clause. *Williams v. Cockrell*, No. 3-01-CV-0240-P, 2002 WL 432977 at *3 (N.D. Tex. Mar. 18, 2002), *citing Moore v. Avoyelles Correctional Center*, 253 F.3d 870, 872 (5th Cir.), *cert. denied*, 122 S.Ct. 492 (2001). Under this test, the court must determine: (1) whether the legislature intended the sanction to be punitive; and (2) whether the sanction is so punitive in effect as to prevent courts from legitimately viewing it as regulatory or civil in nature. *Moore*, 253 F.3d at 872, *citing United States v. Ursery*, 518 U.S. 267, 288, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996).

Petitioner maintains that the SISP conditions of his mandatory supervision are the result of a statute enacted after his conviction. Section 508.317 of the Texas Government Code, entitled "Intensive Supervision Program; Super-Intensive Supervision Program," effective September 1, 1997, provides, in pertinent part:

> (a) The department shall establish a program to provide intensive supervision to inmates released under Subchapter B, Chapter 499, and other inmates determined by a parole panel or the department to require intensive supervision.
>
> (b) The Texas Board of Criminal Justice shall adopt rules that establish standards for determining which inmates require intensive supervision.
>
> (c) The program must provide the level of supervision the department provides that is higher than any level of supervision other than the level of supervision provided by Subsection (d).
>
> (d) The department shall establish a program to provide super-intensive supervision to inmates released on parole or mandatory supervision and determined by parole panels to require super-intensive supervision. The program must provide the highest level of supervision provided by the department.

TEX. GOV'T CODE ANN. § 508.317 (Vernon 2005). Among the conditions a parole panel may impose are electronic monitoring and "any condition that a court may impose on a defendant placed on community supervision[.]" *Id*. § 508.221. However, there is nothing new about the authority of the parole board to impose necessary conditions on inmates released to mandatory supervision. The law in effect at the time petitioner was convicted authorized the parole board to:

> adopt such other reasonable rules not inconsistent with law as it may deem proper or necessary with respect to the eligibility of prisoners for parole and mandatory supervision, the conduct of parole and mandatory supervision hearings, or *conditions to be imposed upon parolees and persons released to mandatory supervision*[.]

TEX. CODE CRIM. PROC. art. 42.12, § 15(g) (Vernon 1986) (since repealed) (emphasis added); *see also* TEX. CODE CRIM. PROC. art. 42.18, § 8(g) (Vernon 1986) (since repealed). This alone defeats petitioner's *ex post facto* claim. *See Cruz v. Texas Parole Div.*, 87 Fed. Appx. 346, 347, 2004 WL 19025 at *1 (5th Cir. Jan. 30, 2004) (changes in Texas parole laws imposing SISP restrictions do not implicate constitutional concerns).

Moreover, the requirements that petitioner wear an electronic monitor and be placed on home confinement do not constitute punishment. Clearly, the intent of this law is not punitive. As the legislature noted:

> [T]here is a compelling state interest in placing inmates released on parole and mandatory supervision under the kind of supervision that will best protect public safety. The level of supervision of inmates released from the Texas Department of Criminal Justice should be appropriate based on their likelihood of committing new offenses, the nature of their original offenses, their performance in prison programs designed to rehabilitate inmates, and any other factor deemed by a parole panel to be relevant to their status.
>
> The legislature [also] finds that there is a need for a program of intensive supervision of certain inmates whose histories indicate a propensity for violence. Regardless of whether an inmate's instant offense is a violent offense, there is a need for careful evaluation and review of each inmate released from prison to determine the need for supervision of the inmate.

TEX. GOV'T CODE ANN. § 508.317, notes. Although petitioner argues that these conditions interfere with his ability to pursue employment opportunities, attend church services, visit friends, and travel freely, those restrictions are not punitive in nature. *See also Moore*, 253 F.3d at 873, *quoting Flemming v. Nestor*, 363 U.S. 603, 614, 80 S.Ct. 1367, 1374, 4 L.Ed.2d 1435 (1960) ("[L]aw serving nonpunitive goals 'is not punishment, even though it may bear harshly on one affected.'"). This ground for relief is without merit and should be overruled.

C.

Petitioner also asserts a double jeopardy claim in connection with the forfeiture of previously earned good time credits. Although the precise nature of this claim is difficult to decipher, it appears that petitioner believes his sentence has been extended beyond his mandatory release date as a result of good time credits forfeited in prior parole revocation proceedings. Such is not the case. Since 1977, Texas law has specifically recognized that good time credit applies only to an inmate's *eligibility* for parole or mandatory supervision, not to the *length* of his sentence. *See* TEX. REV. CIV. STAT. ANN. art. 6181-1, § 4 (Vernon Supp. 1986), *now* TEX. GOV'T CODE ANN. § 498.004(a); *Murphy v. Johnson,* No. 3-00-CV-1033-L, 2001 WL 194997 at *3 (N.D. Tex. Feb. 22, 2001). There is no basis for challenging the forfeiture of good time credits on double jeopardy grounds. *See Galindo v. Cockrell,* No. 4-00-CV-1802-Y, 2001 WL 1057982 at *4 (N.D. Tex. Aug. 31, 2001) ("Since good-time credit has no effect on the length of sentence imposed, an inmate's punishment is not increased by the forfeiture of good-conduct time.").[2]

## **RECOMMENDATION**

Petitioner's application for writ of habeas corpus should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party may file written objections to the recommendation within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon

---

[2] To the extent petitioner argues that the "serve all" notation in his parole records means that he has discharged his sentence, petitioner is mistaken. "Serve all" indicates only that the parole board has decided to wait until the inmate is eligible for mandatory supervision before making a parole determination. *See Ex parte Geiken,* 28 S.W.3d 553, 559 (Tex. Crim. App. Oct. 4, 2000).

grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED:  January 26, 2007.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE